IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:18-CV-00202-MOC

| | | |
|---|---|---|
| **SHENA DARLENE LAMB,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| *Acting Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Defendant's Motion for Summary Judgment, (Doc. No. 13). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits under 42 U.S.C. § 405(g) (2018). For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's final decision is AFFIRMED.

## I. BACKGROUND

The procedural history of this case is not in dispute. Plaintiff applied for Social Security disability benefits on May 29, 2012, alleging that her disability began on January 2, 2010. (Tr. 1446, 1500). Plaintiff's claim was denied at three points: initially, upon reconsideration, and by an Administrative Law Judge ("ALJ"). (Tr. 88–99, 114–27, 145–58, 175–91, 18–33). Plaintiff then requested review of the ALJ's decision by the Appeals Council, which was denied. (Tr. 1436–42). Next, Plaintiff filed a timely appeal in this Court. (Tr. 1536). Before fully briefing the

case, the parties agreed to remand to the ALJ, which the Court ordered on April 7, 2016.  (Tr. 1536–37).

On remand, the ALJ held a second administrative hearing, issuing a decision on February 14, 2017.  (Tr. 1446–64).  In that decision, using the standard five-part test, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 1446–64).  In the February 14, 2017, decision, the ALJ found that Plaintiff had not engaged in substantial gainful employment since January 2, 2010, the date she alleged her disability began.  (Tr. 1448).  Next, the ALJ found that Plaintiff had the following severe impairments: obesity, migraine headaches, bipolar disorder, post-traumatic stress disorder (PTSD), obsessive-compulsive disorder (OCD), and panic disorder without agoraphobia.  (Tr. 1449); see 20 CFR §§ 404.1520(c), 416.920(c).  The ALJ then found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments.  (Tr. 1450).  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant should perform no work with the public and should work with things rather than people.  Within these limitations, she could have occasional supervision and occasional interaction with coworkers.

(Tr. 1453).  Based on these limitations, the ALJ found that Plaintiff was unable to perform her past relevant work as a cashier/stocker.  (Tr. 1463).  Finally, the ALJ determined that there existed a significant number of jobs in the national economy that Plaintiff could perform, given her RFC.  (Tr. 1463).  Based on these determinations, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and was, therefore, not entitled to disability insurance benefits.  (Tr. 1464).  On May 15, 2018, the Appeals Council denied Plaintiff's request for review, rendering the Commissioner's decision final.  (Tr. 1436–42).  Plaintiff has filed this civil action for judicial review of the Commissioner's final decision.

Plaintiff now argues that (1) the case should be remanded as the appointment of the ALJ by the Social Security Administration violated the Appointments Clause of the U.S. Constitution, and (2) the case should be remanded as the ALJ's decision was not supported by substantial evidence considering the standard set in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), as it did not incorporate Plaintiff's "vocationally significant mental health limitations." (Pl. Br. 21). Defendant contends, first, that Plaintiff has waived the first claim by failing to raise it at any point during the administrative process and, second, that the ALJ's decision is supported by substantial evidence and should be affirmed as the ALJ properly explained his findings regarding Plaintiff's mental impairments and accounted for the appropriate limitations in the RFC. (Def. Br. 2).

## II. LEGAL STANDARD

Section 405(g) of Title 42 of the United States Code permits judicial review of the Social Security Commissioner's denial of social security benefits. 42 U.S.C. § 405(g) (2018). When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an [ALJ] has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (citation omitted).

In considering an application for disability benefits, the Commissioner uses a five-step "sequential" process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In doing so, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio, 780 F.3d at 634). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

## III. ANALYSIS

Having carefully considered the record, the parties' briefs, and Plaintiff's assignments of error, the Court finds that Plaintiff has waived her ability to raise an improper appointment claim by not raising the issue earlier in the administrative process and that the Commissioner's decision was supported by substantial evidence.

**A.** **Plaintiff has waived the ability to make a *Lucia* claim by not raising the issue at any point during the administrative process.**

Currently, there is an issue as to whether the Social Security ALJs are lawfully presiding over claims due to a June 2018 Supreme Court case, Lucia v. S.E.C., which determined that ALJs serving the SEC had not been lawfully appointed. 138 S. Ct. 2044 (2018). In Lucia, the Supreme Court held that, because ALJs are appointed by the SEC, they are "Officers of the United States" and, as such, are required to be appointed in the manner prescribed by the Appointments Clause. Id. at 2055. The Court held that ALJ appointments are infirm, however, since ALJs are appointed by SEC staff rather than by the SEC "head of department," the President, or a court of law. Id. at

2053. The Lucia Court further elucidated that, in the context of Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief. Id. at 2055 (quoting Ryder v. United States, 515 U.S. 177, 182–83 (1995)). The Supreme Court acknowledged the challenge in Lucia was timely because it was made before the Commission during administrative proceedings. Id. "To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during her administrative proceedings." Jackson v. Berryhill, No. 1:18-CV-00003-RJC, 2019 WL 1332377, at *3 (W.D.N.C. Mar. 25, 2019); see, e.g., United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (holding that parties may not wait until they are in court to challenge agency appointments); see also Elgin v. Dep't of Treasury, 567 U.S. 1, 23 (2012) (requiring the plaintiff to exhaust her constitutional claim before seeking review in federal court).

Because Plaintiff failed to timely raise her Appointments Clause claim, it has been forfeited, and no remand is necessary on that basis. Meadows v. Berryhill, No. 7:18-CV-17, 2019 WL 938880, at *2 (E.D.N.C. Feb. 25, 2019); Shipman v. Berryhill, No. 1:17-CV-309, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); Britt v. Berryhill, No. 1:18-CV-30, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) (denying motion to remand under Lucia on the ground that the ALJ and the Administrative Appeals Judge presiding over his claim were not constitutionally appointed because the claimant "forfeited the issue by failing to raise it during his administrative proceedings."); see also Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (holding that the plaintiff forfeits issues not raised before the ALJ or Appeals Council).

This holding is in line with several other decisions from this district in which this Court found that the plaintiff forfeited the ability to challenge the constitutionality of the appointment of a Social Security ALJ by not raising the issue at any point during administrative proceedings. See, e.g., Weatherman v. Berryhill, No. 5:18-cv-45, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10,

2018) (Cogburn, J.) (finding post-<u>Lucia</u> challenge to appointment of Social Security ALJ "not to be cognizable on appeal as plaintiff did not first raise it before the Commissioner administratively); <u>Sweat v. Berryhill</u>, 1:18-cv-00042, 2019 WL 1856964 (W.D.N.C. May 15, 2019) (Mullen, J.) (rejecting <u>Lucia</u> challenge to Social Security ALJ appointment because plaintiff forfeited the argument by failing to raise it in front of the Commission); <u>Whiteside v. Berryhill</u>, 1:18-cv-00176-FDW, 2019 WL 1639936 (W.D.N.C. Apr. 16, 2019) (Whitney, J.) (same); <u>Garrison v. Berryhill</u>, No. 1:17-cv-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) (Whitney, J.) (same).  Plaintiff's request for remand on this basis is denied.

### B.      The ALJ's decision is supported by substantial evidence and is not in violation of *Mascio*.

Plaintiff claims that the ALJ did not properly account for Plaintiff's "vocationally significant mental health limitations," as he did not include these additional limitations in either the RFC determination or in the hypothetical posed to the vocational expert.  (Pl. Br. 20–21; Tr. 1453, 1494).  Notably, Plaintiff does not explicitly identify the "vocationally significant mental health limitations" she claims should have been included in the ALJ's decision. (Tr. 21).  She claims that the ALJ's question to the vocational expert "doesn't remotely comply" with <u>Mascio</u> because the ALJ did not differentiate between the ability to perform simple tasks from the ability to stay on task.  (Tr. 20).  To the extent Plaintiff is arguing that the ALJ should have included additional limitations or did not explain his reasoning, this argument is rejected.

### i.      Residual Functional Capacity

The ALJ is solely responsible for determining the RFC of a claimant.   20 C.F.R. § 404.1546(c).  RFC is a statement of the most a person can do in a work setting in light of his impairments, and any related symptoms, such as pain.  20 C.F.R. § 404.1545.  RFC assesses an

individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545. Inasmuch as the RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that she suffers from a physical or mental impairment that limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. SSR 96-8P, 1996 WL 374184, at *5. Only after that function-by-function analysis has been completed may RFC "be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted).

### ii. *Mascio* Violations

In Mascio, the Fourth Circuit declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"

Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Instead, the Fourth Circuit found that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki, 729 F.3d at 177) (internal quotation marks omitted). In remanding the case, the court in Mascio found that a claimant's ability to perform simple tasks differs from the ability to stay on task, and thus a limitation to simple, routine tasks, or unskilled work does not account for a claimant's limitations in concentration, persistence, or pace. Id. at 638. The ALJ had determined that Mascio could perform certain functions, but "said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point. Id. at 637. Because the court was "left to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions," remand was appropriate. Id. at 637.

### iii. Application

Here, Plaintiff claims that the ALJ did not properly account for Plaintiff's "vocationally significant mental health limitations," as he did not include these additional limitations in either the RFC determination or in the hypothetical posed to the vocational expert. (Pl. Br. 20–21; Tr. 1453, 1494). She argues that the ALJ's finding does not "remotely comply" with Mascio because the ALJ's RFC is limited to simple, routine tasks or unskilled work and does not adequately account for Plaintiff's moderate limitations in concentration, persistence, and pace. (Pl. Br. 20–21). Notably, however, Plaintiff does not cite to any specific evidence that supports the proposition that she does, in fact, have trouble staying on task or trouble concentrating. She merely states: "The mental health limitations set out by the two consultative examiners, who saw the Plaintiff at the request of the Disability Determination Service, described in detail above, make it clear this

Plaintiff suffers from vocationally significant mental health limitations." Id. Plaintiff further states: "These limitations should have been included in the hypothetical questions to the vocational witness by [the ALJ]." (Id.). But she does not identify these "two consultative examiners" or otherwise cite the record for support. Nor does she describe the "vocationally significant mental health limitations" that were purportedly "set out" by these examiners. (Pl. Br. 21). Given the context, however, it appears that Plaintiff is claiming that she has limitations in concentration, persistence, and pace, and that the RFC should reflect that.

Presumably, the "two consultative examiners" referenced by Plaintiff are Jerelene V. Howell, MS, a licensed psychological associate, and Dr. Karen Marcus, a Clinical Psychologist. (See Pl. Br. 4 (describing "[t]wo consultative examination reports," which evaluate Plaintiff's mental health status and limitations, by Ms. Howell and by Dr. Marcus)). Plaintiff summarizes the mental health reports of Ms. Howell and Dr. Marcus in her brief. (See id.). According to Plaintiff, these reports indicate that she has problems with, among other things, anger, coping, anxiety, stress-management, and depression. (Id.). But neither of these examination reports state that Plaintiff has trouble staying on task, focusing, or concentrating. (Id.). In other words, these examination reports do not appear to support Plaintiff's claim that the ALJ failed to adequately account for Plaintiff's moderate limitations in concentration, persistence, and pace, as neither examiner noted such limitations in their reports. Plaintiff cites no other evidence in the record, aside from her own testimony, (see Pl. Br. 16), showing that she has difficulties with focusing and concentration.

Regarding Plaintiff's own testimony, although she testified about her subjective difficulties with focus and concentration, the ALJ concluded that Plaintiff's own testimony concerning subjective complaints were not credible when viewed in light of contradictory evidence from

Plaintiff herself and from her mother suggesting that Plaintiff does not have trouble maintaining attention.[1]  (Tr. 1452 (citing Tr. 435); see also Tr. 447 (showing Plaintiff's mother stated that Plaintiff "cleans house, takes care of daughter, laundry, sweeps porch, cleans house all day, every day.")).  When evaluating a claimant's subjective testimony about complaints of pain or other non-exertional disabilities, the ALJ is required to make credibility determinations, which are sometimes negative.  In doing so, the ALJ must consider the claimant's daily activities and examine how the alleged pain (or other nonexertional disability) affects routine life.  Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994).  The ALJ may not rely on the absence of objective proof of pain in discrediting subjective testimony.  Id.  The ALJ must instead refer specifically to the evidence informing the ALJ's decision.  Hatcher v. Secretary, 898 F.2d 21, 23 (4th Cir. 1989) ("This duty of explanation is always an important aspect of the administrative charge.").

The ALJ here did not just rely on "the absence of objective proof," but considered and discussed Plaintiff's activities of daily living and the fact that Plaintiff completed activities that contradicted her claimed limitations of concentration, persistence, and pace.  In accordance with Mickles, the ALJ properly discredited Plaintiff's subjective complaints and the ALJ's error in reviewing the lack of corroborating medical findings is harmless.

To the extent Plaintiff is arguing that the ALJ should have included additional limitations or did not explain his reasoning, her argument is rejected.  The ALJ explained his assessment

---

[1]  As to Plaintiff's statements regarding issues with concentration, the ALJ found that Plaintiff's complaints were not supported by the record.  The ALJ acknowledged evidence from the Global Assessment of Functioning ("GAF") scores indicating limitations in Plaintiff's mental functioning, but the ALJ gave little weight to those scores for multiple reasons, including that the scores were inconsistent with the grossly normal examination findings established by the healthcare providers who assigned the scores; the scores were themselves inconsistent; and that GAF scores are no longer used in the Diagnostic and Statistical Manual of Mental Disorders because of their lack of clarity.  (Tr. 1461-1462).  The record supports the ALJ's conclusions.

regarding the functional effects of Plaintiff's mental impairments and accounted for them in the RFC finding on a function-by-function basis. (Tr. 1453–63). The ALJ reviewed and discussed the relevant evidence of record, including Plaintiff's subjective allegations, the objective treatment notes and examination findings, and the opinions of examining and non-examining sources. (Tr. 1453–63). In doing so, the ALJ specified the reasons for his RFC finding. (Tr. 1453). For example, in discussing limitations interacting or being around others, the ALJ noted the lack of treatment notes indicating problems with communications or interaction with those providers. (Tr. 1456–57). The ALJ also acknowledged Plaintiff's statements regarding her difficulties in this area, but cited evidence that "she loved shopping, noting she had to be careful about large shopping days, but she shopped zero to two times per week . . . ." (Tr. 1456 (citing Tr. 433)). The record supports the ALJ's conclusion that Plaintiff has no difficulties getting along with her healthcare providers. (See, e.g., Tr. 594–95, 756–57, 1667, 1669, 1678, 1759, 1802, 1859, 1866, 1993, 2049).

The ALJ's conclusion is further supported by the longitudinal medical evidence showing that Plaintiff's condition was not as extreme as she alleged because she "was able to perform tasks for others, including driving them to work or doctor appointments and providing care." (Tr. 1459). The ALJ also cited evidence from Plaintiff's mother, who stated that, although Plaintiff reported difficulties with authority figures, she had never lost a job due to problems with others and she could care and perform tasks for others. (Tr. 1462 (citing Tr. 446-452)). Plaintiff's mother also noted that Plaintiff "engaged in social activities and spends time with family, on Facebook, and texting," and that she "could pay attention as long as necessary." (Id.). Despite Plaintiff's claims, this evidence supports the ALJ's conclusion that Plaintiff's difficulties with social interactions limit her to work involving no interaction with members of the public and only occasional interactions with others in the workplace.

Unlike the decision at issue in <u>Mascio</u>, the ALJ here did not restrict Plaintiff to simple, routine, repetitive tasks, or to unskilled work. (Tr. 1453). In fact, the ALJ explicitly rejected a limitation to "simple routine repetitive tasks in a low stress environment" given evidence from state agency sources,[2] evidence showing that Plaintiff could finish what she started, and evidence indicating she could perform such tasks as "babysitting, driving people to appointments, caring for others, and delivering papers." (Def. Br. 14 (citing Tr. 1460)). Beyond that, Plaintiff cites no evidence of her inability to remain on task over the course of the workday. She merely claims that "the ability to perform simple tasks differs from the ability *to stay on task*," (Pl. Br. 21 (citing <u>Mascio</u>, 708 F.3d at 638 (emphasis added)), without referencing anything in the record to support the proposition that she, herself, has trouble staying on task.

The ALJ discussed the reasoning supporting his conclusion that Plaintiff was not restricted to unskilled work. He also explained his assessment regarding the functional effects of Plaintiff's mental impairments and accounted for them in the RFC finding on a function-by-function basis. (Tr. 1453–63). The ALJ's decision is, therefore, supported by substantial evidence and affirmed. <u>See</u> <u>Cochran v. Berryhill</u>, No. 1:16-CV-317-FDW, 2017 WL 5585723 (W.D.N.C. Nov. 20, 2017) (citing <u>McNutt v. Berryhill</u>, 2017 WL 1323471 at *7 (W.D. Va. 2017)) (affirming RFC restrictions

---

[2] To the extent Plaintiff is arguing that the ALJ should have assigned more weight to the opinions of state agency sources or incorporated additional limitations from those opinions, (<u>see</u> Pl. Br. 21), the Court rejects this argument. (Tr. 95–97, 108–10, 123–25, 154–56, 170–71, 185–87). Generally, the ALJ assigned partial weight to these opinions and adopted physical limitations and mental restrictions regarding Plaintiff's ability to interact with others. (Id. 1460). He noted that the sources of those opinions did not have the opportunity to review more recent evidence in the record, which showed fewer restrictions than those opinions stated. (<u>Id.</u>). Specifically, the ALJ cited evidence that Plaintiff's ability to maintain concentration, persistence, or pace were greater than these medical sources stated in their reports. (<u>Id.</u>). In doing so, the ALJ explicitly rejected the more restrictive opinion that Plaintiff should be limited to "simple routine repetitive tasks in a low stress environment." (<u>Id.</u>). Consequently, the ALJ was not required to incorporate restrictions stated by the state agency providers.

because ALJ explained why no additional work-related limitations applied); <u>Finney v. Berryhill</u>, No. 5:16-CV-00188-MR, 2018 WL 1175229, at *5 (W.D.N.C. Mar. 6, 2018) (rejecting <u>Mascio</u> challenge to ALJ decision because ALJ cited specific evidence supporting conclusion that no additional limitations applied).

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed: September 3, 2019

Max O. Cogburn Jr.
United States District Judge